*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 25, 2024

v

CLAUDELL TURNER,

        Defendant-Appellant.

No. 357699
Oakland Circuit Court
LC No. 2021-276333-FH

ON REMAND

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

MARKEY, P.J. (*dissenting*).

I once again disagree with this majority's analysis and adopt and incorporate by reference my earlier dissent. See *People v Turner*, 342 Mich App 581, 603-611; 995 NW2d 857 (2022), vacated 511 Mich 992 (2023). I must, however, expand somewhat on my previous analysis and reasoning.

The majority effectively concludes that Deputy Kevin Myers exceeded the bounds of a permissible frisk to search for weapons under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), by not limiting the search to a pat-down of defendant's exterior clothing and by placing his hands in defendant's pocket and sweatpants as part of a purported general exploratory search for evidence. I adamantly disagree.

A search for weapons is reasonable during a *Terry* stop when there is reason to believe that a detainee is armed and dangerous. *Johnson v VanderKooi*, 509 Mich 524, 539-540; 983 NW2d 779 (2022). But *Terry* does not permit a generalized cursory search for weapons or a search for evidence other than weapons. *Id.* at 540. "*Terry* strictly limits the permissible scope of a patdown search to that reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be used to assault an officer." *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). The search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion." *Terry*, 392 US at 26.

With respect to the observance of "bulges" in a suspect's clothing, the United States Supreme Court in *Pennsylvania v Mimms*, 434 US 106, 111; 98 S Ct 330; 54 L Ed 2d 331 (1977), found that a large "bulge in [his sport's] jacket permitted [an] officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer." The Court upheld the officer's actions in reaching under the jacket and into Mimms's waistband and removing a gun hidden there. *Id.* at 107, 112. In *United States v Hill*, 545 F2d 1191, 1192-1193 (CA 9, 1976), a police officer observed a bulge in the defendant's waistband that might have been a weapon, and the officer raised the defendant's shirt, discovering rolls of currency. The United States Court of Appeals for the Ninth Circuit in ruling the search constitutional held:

> We find that the lifting by the officer of [the defendant's] shirt was not, under the circumstances, overly intrusive. *Terry* . . . confines a self-protective search for weapons to an intrusion reasonably designed to discover instruments of assault. It precludes general exploratory searches. In the instant case the officer's investigation was wholly confined to the area of the bulge in question and was a direct and specific inquiry. As such it did not transcend the permissible bounds established by *Terry*. [*Hill*, 545 F2d at 1193.]

In this case, there is no dispute that Deputy Myers had the authority to frisk or pat-down defendant for purposes of determining whether he had a weapon on his person. Deputy Myers noticed a bulge or lump in the area of a pocket of defendant's sweatpants, which he deemed suspicious. The deputy did not know whether the bulge was a weapon or not; therefore, he reached into the pocket and pulled it out, discovering that it was a stack or roll of cash as in *Hill*. With respect to the second bulge, which was in the crotch area of defendant's sweatpants, Deputy Myers described it as having a "point," and he believed that it could be the handle of a small caliber pistol or handgun. The deputy reached into the sweatpants and felt "some type of hard plastic[.]" Deputy Myers did testify that when he pulled defendant's waistband forward, he could see that the object was a scale when he reached in and removed it from defendant's sweatpants. I conclude that the two intrusions—into the pocket and crotch area of the sweatpants—were direct and specific to the locations of the bulges and were reasonably designed to discover weapons. The intrusions were necessary to assess whether defendant possessed instruments of assault. Contrary to the majority's conclusion, Deputy Myers patently did not engage in a general exploratory search for incriminating evidence.

In *People v Chapo*, 283 Mich App 360, 366-367; 770 NW2d 68 (2009), this Court observed as follows:

> A police officer may make an arrest without a warrant if there is probable cause to believe that a felony was committed by the defendant, or probable cause to believe that the defendant committed a misdemeanor in the officer's presence. Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed. The standard is an objective one, applied without regard to the intent or motive of the police officer. [Quotation marks and citations omitted.]

-2-

The exception to the warrant requirement for a search incident to a lawful arrest generally allows a police officer to search and seize items found on a person during a lawful arrest. *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020). In this case, Deputy Myers's partner immediately observed the white powdery residue on the scale when it was lifted out of defendant's sweatpants. This then provided probable cause that defendant was engaged in felonious conduct and justified an arrest and a search of defendant incident to the lawful arrest.

I recognize that the argument is that once Deputy Myers observed and identified the scale upon pulling the waistband of defendant's sweatpants away from his body, he had no authority to retrieve the scale from defendant's sweatpants because he supposedly knew that it was not a weapon. Then, had the scale not been removed from his sweatpants, the deputy's partner who noticed the white powdery residue on the scale would have not seen the residue, thereby eliminating the legal basis to continue the search of defendant's person. I cannot, however, accept such a parsed, unwieldy proposition that Deputy Myers was constitutionally prohibited from simply lifting the digital scale out of defendant's sweatpants for a brief moment in order to get a full 360-degree view of the object to make sure that it fully and exclusively explained the pointy bulge in defendant's sweatpants and could not be used as a weapon. Moreover, in my view, the evidence of the roll of cash, which amounted to $680, and the digital scale—even without considering the white powdery residue—was sufficient to warrant a reasonable person to believe that an offense had been or was being committed. I reach that conclusion because the digital scale, a common tool of drug traffickers, *was hidden in defendant's sweatpants*. This was not a scale sitting in a place of business, a house, a garage, or even a vehicle; it was a scale deliberately hidden in the crotch of defendant's sweatpants! In sum, the majority crafts a bewildering, illogical and impractical application of the law in this factual scenario that I conclude is incorrect.

I would affirm the trial court's ruling denying defendant's motion to suppress the evidence and again dissent.

/s/ Jane E. Markey